IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY and RICHARD ORDILLE, | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil No.  01-3503  (JBS) |
| v. | |
| UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF AGRICULTURE, | **OPINION** |
| Defendants. | |

APPEARANCES:

Gerald J. Grant, Jr., Esq.
Gerald J. Williams, Esq.
WILLIAMS, CUKER & BEREZOFSKY
51 Haddonfield Road
Suite 160
Cherry Hill, New Jersey 08002
      Counsel for Plaintiffs

Christopher J. Christie
United States Attorney
      By:  Louis J. Bizzarri
           Assistant United States Attorney
401 Market Street, 4th Floor
P.O. Box 1427
Camden, New Jersey 08101
      Counsel for Defendants


**SIMANDLE**, District Judge:

Two New Jersey blueberry farmers have alleged that the
United States Department of Agriculture (USDA) discriminated
against them on the basis of their national origin, marital
status, and sex in financial loan and assistance transactions
over the course of sixteen years.  Traditionally, such claims of

discrimination were only allowed if brought within the applicable statute of limitations period which has expired for plaintiffs' claims.  However, in section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of 1999, Congress waived the statute of limitations for certain claims of discrimination that were filed with the USDA prior to July 1, 1997.  Pub. L. 105-277 (codified 7 U.S.C. § 2279 note).

This action is before the Court upon the motion of defendants, United States of America and United States Department of Agriculture, for summary judgment on the complaint of plaintiffs Mary and Richard Ordille, pursuant to Rule 56, Fed. R. Civ. P.  The defendants assert that summary judgment should be entered in their favor because plaintiffs' complaint was not filed prior to July 1, 1997.  Plaintiffs contend that summary judgment should not be entered because there is a genuine issue of fact as to whether they filed a complaint before July 1, 1997. For the reasons stated herein, defendants' motion for summary judgment on plaintiffs' Complaint will be granted and plaintiff's Complaint against the defendants will be dismissed with prejudice.[1]

---

[1] By Order dated November 21, 2002, this matter was dismissed without prejudice to the right to reopen the action within 60 days if a proposed settlement was not consummated.  Following the parties' failure to reach a settlement, the Court reopened the matter at Plaintiffs' request, with the consent of counsel for Defendants.  The case was reopened on January 15, 2003.

I.     **PROCEDURAL AND FACTUAL BACKGROUND**

   A.   **The Alleged Discrimination**

   In 1976, Richard and Mary Ordille leased a seventy-two acre farm in Hammonton, New Jersey on which they primarily harvested blueberries.  (Walkow Decl., Ex. E at 2; Complaint, ¶ 8.)  Mary Ordille did most of the farm management as Richard was employed full-time in non-farm-related work.  (Complaint, ¶ 8.)  In 1982, the Ordilles approached the Farmers Home Administration (FmHA) at its Mays Landing, New Jersey office to see if they could purchase the farm.  (Walkow Decl., Ex. D at 1.)  The FmHA, predecessor to today's Farm Service Agency (FSA), administers federally funded credit and benefit programs which provide and guarantee loans to help farmers purchase farms, restructure debt, or recover from disasters.  (Complaint, ¶ 4, 5.)

   Plaintiffs claim that their visit to the FSA in 1982 was the beginning of sixteen years of discrimination based on their national origin (Italian American) and their marital status (married) as well as on Mrs. Ordille's sex (female).  (Walkow Decl., Exs. E. at 2; A at 1.)  The various alleged incidents of discrimination are detailed in the USDA's administrative record and include allegations that the Ordilles were given a loan with 9.5% interest though they were approved for 5% interest, that they were refused assistance when they tried to sell their farm, that the FSA refused to release its mortgage interest on their

3

personal residence, that they were wrongfully accused of being a "problem case" when they did not immediately deposit fire insurance proceeds, and that the FSA took their Internal Revenue Service refund check in 1995 when they were facing foreclosure of their property.  (Walkow Decl., Ex. F at 3-8.)

While the administrative record presents documents that relate to these incidents and to the USDA's defenses to them, this Court need not now determine whether the alleged discriminatory actions occurred.  Instead, this Court must first determine whether the USDA properly found that the Ordilles' complaint regarding the incidents was untimely.  (See Complaint.)  Therefore, this Court will not discuss each incident in detail here, but will instead discuss the Ordilles' communications with the USDA as they apply to the current action.

B.  **The 1997 Complaint**

On January 3, 1997, plaintiffs Richard and Mary Ordille sent a letter to Mr. Dan Glickman, United States Secretary of Agriculture, to complain about "serious ethics violations as well as violations of our rights in regards to the servicing of our account."  (Pls.' Br., Ex. A.)  They attached to their letter a four-page affidavit relating all the problems that they felt should be investigated.  (Id.)  They explained that they "always felt uncomfortable" when they met at the Mays Landing FSA office because they never knew as much about the availability of loans

4

and grants as their neighbor farmer, a FSA board member, and his brother, a FSA loan manager, did.  (Id. at 2.)  They stated that the FSA had made a mistake when writing their first mortgage that was not discovered until 1986, that the agency had not offered them help when they suffered a bad crop freeze even though they had a good payment history, and that they had to hire a lawyer once to correct an FSA mistake.  (Id. at 2-3.)  Their affidavit explained additional problems as well with the FSA management of their mortgage; at all times they related their problems in the plural "we" and never mentioned or referred to discrimination. (Id.)

On February 20, 1997, James A. Flickinger wrote to the Ordilles on behalf of Secretary Glickman.  (Pls.' Br., Ex. B.) Mr. Flickinger discussed each allegation and explained why it was justified, finally concluding that,

> [w]e regret that you believe you have been treated unfairly.  However, when borrowers default on their loans, FSA has no choice but to accelerate their debt and pursue foreclosure action against the property they pledged as security for the loans. . . . If you have further concerns regarding your loan account, we would be pleased to respond to them.

(Id. at 2-3.)

### C.  **The 1998 Complaint**

Mrs. Ordille next communicated with the USDA in August of 1997 when, at a meeting of the Congressional Black Caucus, she asked Dr. Jeremy S. Wu, Deputy Director of the USDA Office of

Civil Rights, what the status of her complaint was.  (Pls.' Br., Ex. C; Pls.' Br. at 5.)  Dr. Wu responded in an October 20, 1997 letter that the Program Investigations Division responsible for processing discrimination complaints had no record of an active complaint from her.  (Id.)  Dr. Wu enclosed the appropriate form if she wished to file a complaint.  (Id.)

On January 1, 1998, Richard and Mary Ordille completed the form and attached a five-page letter detailing their allegations. (Pls.' Br., Ex. D.)  On the complaint form, they checked the applicable discrimination to include national origin, sex, marital status, and reprisal discrimination.  (Id.)  Their attached letter to Dr. Wu began by stating that its "confusing and lengthy" statement of facts was necessary to "show the pattern of discrimination, reprisal and intimidation that has plagued this case since the very beginning."  (Id. at 2.)

The letter presented the same general facts as those in the 1997 complaint, but also included allegations of discrimination. For example, the Ordilles stated that when they visited the FSA office in 1982 to try to get financing for the farm property that was "located in the middle of three other male farmers" in Mary Ordille's name, they were refused because FSA would not give financing to an "Italian American female farmer."  (Id.)  The Ordilles also alleged that they suffered punishment and discrimination, especially when they took "note that no other

farmer in [their] area had to sell their farm or was being treated like [them]." (Id. at 2-3.) They felt "frustrated and intimidated" and like they were being "punished for buying the farm." (Id. at 4.) The letter detailed many instances where they felt that the FSA had humiliated them, lied to them, and "treat[ed] them like criminals." (Id. at 5-6.)

The Ordilles received four letters in response to their complaint that are pertinent to this action. The first came from Rhonda Davis, Chief of the Statute of Limitations Project at the Office of Civil Rights of the USDA, on September 17, 1999. (Pls.' Br., Ex. E.) The letter was to notify them that their "pre-July 1, 1997 complaint meets the requirements for a waiver of the Statute of Limitations" and to inform them of their rights and options under the Statute of Limitations waiver. (Id. at 1.) The letter referred to an enclosed copy of the Federal Register, stating "[y]ou need to read the accompanying copy of the Federal Register explaining your rights under Section 741" and provided the Ordilles with a toll-free phone number for any questions. (Id. at 2.)

The second letter came from Rosalind D. Gray, Director of the Office of Civil Rights, on October 28, 1999. (Pls.' Br., Ex. F.) The letter explained that the final decision of the USDA regarding the complaint found that "after a thorough analysis . .

. discrimination did not occur in your case." (Id. at 1.)  The

letter continued, stating:

> This decision does not prevent you from exercising any
> rights that you may have in accordance with Section 741
> of Public Law 105-277.  On September 17, 1999, you were
> mailed a letter detailing the rights that are available
> to you and what actions you should take to exercise
> those rights. . .

(Id.)

The third letter was again from Rhonda Davis, Chief of the

Statute of Limitations Project, which was dated December 6, 1999.

(Pls.' Br., Ex. G.)  The letter stated, in pertinent part:

> The Office of Civil Rights, Statute of Limitations
> Project, determined your discrimination complaint filed
> with the Department of Agriculture (USDA) eligible for
> processing under the Section 741 legislation . . .
>
> Because your pre-July 1, 1997 complaint meets the
> requirements for a waiver of the Statute of
> Limitations, we have given it a docket number, shown at
> the top of this letter, and have assigned it to the
> Statute of Limitations project for review. . .

(Id. at 1.)

Finally, the fourth letter came from Rhonda Davis.  (Pls.'

Br., Ex. H.)  It stated, in pertinent part:

> The Office of Civil Rights, Statute of Limitations, has
> completed review of your discrimination complaint with
> the Department of Agriculture (USDA).  This review was
> conducted in accordance with Section 741 of Public Law
> 105-277 to determine your eligibility to have your case
> processed under this new legislation. . . .
>
> This is to advise you that you are not eligible to
> participate under the Section 741 process.  Your case
> was determined ineligible for Section 741 processing
> because your complaint was not filed with USDA prior to
> July 1, 1997.  Our records show that your complaint was

8

filed on January 1, 1998.  This eligibility review is a
final determination denying your complaint as eligible
to be processed under the provisions of Section 741.

(Id.)

   D. **Appeal**

The Ordilles, through counsel, requested an oral hearing
before an Administrative Law Judge (ALJ) on the timeliness of the
Ordilles' discrimination claim.  (Walkow Decl., Ex. K.)  After
the matter was referred to an ALJ at the United States Department
of Housing and Urban Development, (Walkow Decl., Ex. M), the USDA
submitted its position statement on October 24, 2000, admitting
that the agency had sent the Ordilles one letter that advised
them that they were eligible for section 741 processing and one
letter that informed them that they were not, but concluding
that:

> Complainants have a long and convoluted relationship
> with FSA.  During the alleged years of discrimination,
> they communicated with USDA on several occasions.
> Complainants had stated before July 1st, 1997, in
> different forums, that their rights had been violated.
> However, in those communications Complainants did not
> mention that their civil rights had been violated based
> on any of the prohibited basis (i.e., race, color,
> national origin, sex, age, religion, disability, sexual
> orientation, marital status, familial status, public
> assistance or retaliation).  Per Complainants' request,
> their file was reviewed to determine the eligibility of
> their complaint to be processed under 741.  Their
> complaint was determined ineligible to be processed, in
> light of the fact that Complainants' previous letters
> seem to be complaints regarding service, but do not
> allege civil rights issues; and, thus cannot be
> considered as a complaint of improper conduct motivated
> by one or more impermissible bases.

9

(Walkow Decl., Ex. L.)  By Order to Show Cause, the Ordilles were notified that they had until November 20, 2000 to show cause why the proceeding was not time-barred since it was not brought before July 1, 1997.  (Walkow Decl., Ex. N.)  The Ordilles requested an extension until December 1, 2000; Chief ALJ Alan W. Heifeiz dismissed their appeal on December 4, 2000 when he had not received anything from them.  (Id.)

On December 6, 2000, however, a clerical mistake was uncovered that revealed that the Ordilles had filed a response to the Order to Show Cause on December 1st.  (Admin. Rec., Part 2, Section 7.)  As a result, Chief ALJ Heifeiz considered their response and issued a Supplemental Determination on December 8, 2000.  (Walkow Decl., Ex. B.)  He found that:

> Complainants have every right to be confounded by their correspondence from the Office of Civil Rights.  Why Director Gray informed them that they could exercise "any rights that you may have in accordance with Section 741," when she sent them a "final decision" on their discrimination complaint - which she knew was dated January 1, 1998, and was, therefore time-barred - is a question only she can answer. . . . However, regardless of their experiences with the Office of Civil Rights, this forum has no jurisdiction to adjudicate any further their Complaint of discrimination because it is time-barred under Section 741.  Accordingly, the determination to dismiss the Complaint must stand.

(Id.)

The Ordilles filed a petition for reconsideration of the ALJ's dismissal.  (Admin. R., Part 2.)  On February 1, 2001, the Paul W. Fiddick, Assistant Secretary for Administration of the

10

USDA submitted the final determination of the USDA.  (Walkow

Decl., Ex. A.)  The determination adopted the ALJ's prior

determination, finding that:

> None of your complaints or letters prior to January 1,
> 1998, mentions words such as "discrimination," "sex,"
> "gender," etc., that would lead one to believe that you
> were complaining of sex-based discrimination, or of any
> other form of discrimination, violating either Title
> VII or ECOA. . . . In fact, prior to January 1, 1998,
> your complaint letters addressed "ethics violations," a
> generic allegation of "violation of [your] rights,"
> "incompetent handling of your file, and not being
> "serviced properly or according to regulations."  Such
> allegations, without more, are the basis for program
> complaints . . . not unlawful discrimination. . .
>
> Here, within the statutory time period, there was
> nothing filed by you that gave even a fair hint that
> unlawful discrimination of any type was the basis for
> your charges. . . That being the case, there was no
> timely-filed, sufficient allegation of discrimination
> to which the January 1, 1998 complaint could relate
> back.

(Id. at 4-5.)  The USDA thus found that the Ordilles could not

present their claims of discrimination because they were time-

barred and were not allowed under section 741.  The Ordilles then

filed the current appeal of the USDA final determination with

this Court on July 25, 2001.

## II.  **DISCUSSION**

On this motion for summary judgment, defendants argue that

there is no question of fact regarding the affirmation of the

USDA's final decision that the Ordilles' claims of discrimination

are time-barred.  Plaintiffs, however, argue that they should be

allowed to pass this summary judgment phase and receive a trial

on the merits of their discrimination claims because their complaint is eligible for a section 741 determination.

As an initial matter, this Court must clarify that it cannot offer plaintiffs the full relief that they seek even if they were to pass this summary judgment stage. The question before this Court is whether the USDA properly decided that the Ordille complaint is time-barred. If the complaint is time-barred, summary judgment in the defendants' favor is proper. If there remains any material question of fact as to whether the complaint is time-barred, summary judgment in favor of the defendants is not proper. However, this Court cannot then hold a trial on the merits of the discrimination claim; instead, the claim would need to be remanded for decision in the administrative process first.

The provision at issue here, section 741, does allow the complainant to bring an eligible discrimination claim directly to Federal Court. Section 741(a). However, for the statute of limitations to be waived under section 741, the proceeding must commence "not later than 2 years after the date of the enactment of this Act [Oct. 21, 1998]." Id. This action was commenced by the filing of a complaint on July 25, 2001. Therefore, it was filed over two years after October 21, 1998, and section 741 will not allow a direct action beyond the statute of limitations period.

The statute of limitations for the Equal Credit Opportunity Act (ECOA), which plaintiffs assert their discrimination claims under, has a statute of limitations that expires "two years from the date of the occurrence of the violation."  15 U.S.C. § 1691e(f).  The alleged violations in the present complaint occurred between 1982 and 1998.  Thus, this action, filed on July 25, 2001, cannot proceed as a direct ECOA action because it is time-barred.

This action, thus, is not a direct action under ECOA or section 741(a).  Instead, the plaintiffs timely filed their complaint administratively on January 1, 1998.[2]  The current action was then brought pursuant to section 741(c), which states:

> if an eligible claim is denied administratively, the claimant shall have at least 180 days to commence a cause of action in a Federal court of competent jurisdiction seeking a review of such denial.

The final determination of the USDA occurred on February 1, 2001 and the Ordilles' complaint was timely filed with this Court on July 25, 2001.

As a result, this Court's only jurisdiction is to review the administrative denial, which did not reach the merits of the

---

[2]     Section 741(b) provides, in pertinent part:

The complainant may, in lieu of filing a civil action, seek a determination on the merits of the eligible complaint by the Department of Agriculture if such complaint was filed not later than 2 years after the date of enactment of this Act [Oct. 21, 1998]. . .

13

discrimination claims, but focused on the untimeliness of the claims.  Therefore, the issue before this Court at this time is not whether the Ordilles suffered discrimination, but is whether any material issue of fact remains regarding the timeliness of the Ordille complaint.

A.  **Summary Judgment Standard**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that

14

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party, here defendants United States of America and USDA, always bear the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where the nonmoving party bears the burden of persuasion at trial, as plaintiffs Richard and Mary Ordille do in the present case, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

The non-moving party, here plaintiffs Richard and Mary Ordille, "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e). Plaintiffs must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50. Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Liberty Lobby, 477 U.S. at 249-50.

15

**B.   <u>Section 741</u>**

Section 741 of the Agriculture, Rural Development, Food and Drug Administration and Related Agencies Act of 1999 waives the statute of limitations for "eligible complaints."[3]  Pub. L. 105-277 (codified at 7 U.S.C § 2279 note).  An "eligible complaint" is defined as:

> a non-employment related complaint that was filed with the Department of Agriculture before July 1, 1997 and alleges discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996 –
> (1)  in violation of the Equal Credit Opportunity Act (15 U.S.C. 1691 et seq.) in administering –
>       (A)  a farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account; or
>       (B)  a housing program established under title V of the Housing Act of 1949 . . .; or
> (2)  in the administration of a commodity program or a disaster assistance program.

Section 741(e).  The Equal Credit Opportunity Act prohibits discrimination by a creditor against any applicant with respect to any aspect of a credit transaction on the basis of "race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a).

---

[3]    Section 741(a) states:

To the extent permitted by the Constitution, any civil action to obtain relief with respect to the discrimination alleged in an eligible complaint, if commenced not later than 2 years after the date of the enactment of this Act [Oct. 21, 1998], shall not be barred by any statute of limitations.

Congress decided to waive the statute of limitations for
discrimination complaints filed before July 1, 1997 which allege
discrimination by the USDA that occurred between January 1, 1981
and December 31, 1996 because the USDA administrative process
during the 1980s and 1990s "did not function effectively."
(Pls.' Br., Ex. I at 2-3 (Federal Register at 67392.)) Therefore,

> while administrative complaints were pending, the
> statutes of limitations for certain discrimination
> statutes under which complainants potentially could
> obtain relief continued to run and the time periods
> available for obtaining relief expired, thus
> foreclosing the possibility for relief for those who
> had filed discrimination complaints administratively
> with the Department.

Id.

This waiver of the statute of limitations was "extraordinary
relief" allowed by Congress between October 21, 1998 and October
21, 2000.  Fed. Reg. at 67393.  To implement the relief, the USDA
Office of Civil Rights automatically docketed complaints that it
already was handling for consideration as "section 741 complaint
requests" and would notify the complainants of the action and of
the docket number of their request in a letter by March 1, 1999.[4]
7 C.F.R. § 15f.5.  If a complaint had previously been dismissed
by the Office of Civil Rights, but fell within the eligibility
dates for relief, the complainant could re-file the complaint for
section 741 consideration.  Id.  At any time in the process, the

---

[4]    The Ordilles received such a letter, but not until
December 6, 1999.  (Pls.' Br., Ex. G.)

complainant could request a hearing before an administrative law judge.[5]  7 C.F.R. § 15f.11.  Once requested, the Office of Civil Rights would turn over its entire file to the ALJ and file a report stating its position on the merits of the complaint.[6]  7 C.F.R. § 15f.15.  Then, the ALJ would make a proposed decision that became final thirty-five days later, unless the complainant requested a review of the determination with the Assistant Secretary for Administration (ASA).[7]  7 C.F.R. § 15f.16.  After the ASA's review, the USDA rendered its final determination.[8]  7 C.F.R. § 15f.24.

C.  **Analysis**

The Ordilles filed two complaints that are relevant to this determination, one on January 3, 1997 and one on January 1, 1998. The USDA found that both complaints suffer an eligibility flaw under section 741.  The January 3, 1997 complaint was filed pre-July 1, 1997, but was not brought regarding a charge of

---

[5]    The Ordilles requested such a hearing on September 9, 1999.  (Walkow Decl., Ex. K.)

[6]    The agency submitted its position statement on October 24, 2000.  (Walkow Decl., Ex. L.)

[7]    The proposed determination here consisted of the December 4, 2000 dismissal and the December 8, 2000 supplemental determination.  (Walkow Decl., Exs. N and B.)  The Ordilles then filed for reconsideration with the Assistant Secretary for Administration.  (Admin. Rec., Part 2.)

[8]    The USDA submitted its final determination of ASA Paul W. Fiddick on February 1, 2001.  (Walkow Decl., Ex. A.)

discrimination.  The January 1, 1998 complaint was brought regarding a charge of discrimination under ECOA, but was not filed pre-July 1, 1997.  This Court must thus determine whether there is any material issue of fact regarding the eligibility flaws of the two complaints.  This Court must exercise a de novo standard of review in making this determination.  Section 741(g).

### 1.  January 3, 1997 Complaint

Because it is clear that the January 3, 1997 complaint meets the pre-July 1, 1997 eligibility requirement, the issue is whether the complaint addresses the eligible subject matter of a section 741 complaint.  For the January 3, 1997 complaint to be eligible, it would need to be a non-employment related complaint that alleges discrimination either (1) in the administration of the Ordilles' farm ownership loan or (2) in the provision of disaster assistance.  Section 741(e).  Eligible discrimination is that which is based on the complainant's race, color, religion, sex, age, national origin, marital status, familial status, sexual orientation, disability, need for public assistance, or prior challenge of a discriminatory practice.  15 U.S.C. § 1691(a); 7 C.F.R. § 15d.

Here, the Ordilles' 1997 complaint never mentions discrimination.  Plaintiffs admit this, but argue that their complaint must be liberally construed to state a claim of discrimination.  Plaintiffs are correct that a pro se plaintiff's

complaint must be read liberally.  However, no case provides this Court authority to read the complaint as liberally as the plaintiffs request.

This Court holds <u>pro</u> <u>se</u> complaints to "less stringent standards than formal pleadings drafted by lawyers," <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), because "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process," <u>Love v. Pullman Co.</u>, 404 U.S. 522, 527 (1972).  As a result, charges of discrimination are generally construed broadly.  See <u>Motorola, Inc. v. McLain</u>, 484 F.2d 1339, 1334 (7th Cir. 1973); <u>Wetzel v. Liberty Mutual Ins. Co.</u>, 511 F.2d 199, 202-03 (3d Cir. 1975), rev'd on other grounds, 424 U.S. 737 (1976).

However, a charge of discrimination must still be clear enough to give fair notice that a discrimination charge has been brought.  See cf. <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002) (finding that petitioner need not plead prima facie case of discrimination, as long as type of discrimination and relevant incidents are pled to give defendant fair notice "of what petitioner's claims are and the grounds upon which they rest").  As a result, if a private party makes a technical error in its discrimination claim, but still clearly alleges unlawful discrimination, courts will liberally construe the claim so that procedural technicalities do not stop the private party from

enforcing the anti-discrimination laws.  See Alexander v.
Gardner-Denver Co., 415 U.S. 36, 44 (1974) (stating that rights
of private party must not be barred by procedural technicalities
if Title VII is to operate effectively); Wetzel, 511 F.2d at 202-
03 (finding that denying access to federal courts because of a
technical error would undermine the policies of Title VII).
Therefore, the Third Circuit allowed a claim to continue when the
plaintiff claimed sex discrimination based on her pregnancy but
indicated the reason for her claim by checking a box labeled
"benefits" instead of "terms and conditions."  Wetzel, 511 F.2d
at 202-03.  The Seventh Circuit allowed a claim for sex
discrimination when the plaintiff checked race and color
discrimination on the form and also alleged that she was accused
of "being a leader of the girls on the floor."  Jenkins v. Blue
Cross Mutual Hospital Insurance, Inc., 538 F.2d 164, 169 (7th
Cir. 1976).

However, when the plaintiff's charge does not indicate the
type of discrimination, the court will not expand the pleading to
encompass a type of discrimination that the agency could not have
reasonably known that the plaintiff intended it to investigate.
Vela v. Village of Sauk Village, 218 F.3d 661, 664 (7th Cir.
2000).  For example, when a plaintiff's charge alleged gender
discrimination, she could not later claim that the charge also
encompassed a charge for sexual harassment because the two

charges arose from sets of facts wholly distinct from one another.  Vela, 218 F.3d at 664; Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240, 1247-48 (D.N.J. 1990). Likewise, when a plaintiff alleged race discrimination, he could not later claim that his charge encompassed age and disability discrimination because such charges are not reasonably related, especially when plaintiff did not allege any facts that would have caused an agency to think that charges of age or disability discrimination had been brought.  Pickens v. Intercommunity Agency, No. 96-8415, 1997 WL 727604 at *3-4 (E.D. Pa. Nov. 21, 1997).  The court cannot expand a charge if the defendant was never put on notice that it may be subject to such a charge.  Id; see also Hawkins v. Groot Indus., Inc., No. 01-1731, 2002 WL 31064313 at *4 (N.D. Ill. 2002) (finding that when plaintiff never claimed national origin discrimination or mentioned discrimination against Hispanic employees, the court "even liberally construing [the] charges" could not interpret them to charge racial or national origin discrimination).

Here, plaintiffs' January 3, 1997 complaint never mentions the word "discrimination."  Plaintiffs still argue that their complaint should be construed as a claim of national origin, marital status, and sex discrimination because they alleged that there had been "violations of [their] rights in regards to the servicing of [their] account" and that "other farmers under the

same circumstances seemed to receive help." (Pls.' Br. at 9-10.)
Yet in their letter and its four-page single-spaced attached
affidavit, the Ordilles never once mentioned their national
origin, their marital status, their sex[9], or anyone else's.
(Pls.' Br., Ex. A.) Repeatedly, however, they alleged "serious
ethics violations" and "unethical actions," and complained that
their account was handled in an "incompetent fashion" and that
they were "never serviced properly." (Id.) The Ordilles wrote
about their loan transactions with the FSA in detail, and
concluded their affidavit by stating:

> Farmers Home Administration's negligence in servicing,
> plus the blatant violations of regulations and the
> incorrect bookkeeping as shown in the text of this
> affidavit and the accompanying documents is the cause
> of the escalating interest and the outrageous amount
> the account now shows.

(Pls.' Br., Ex. A at 5.)

There is simply nothing in the complaint that would alert
any reasonable person to investigate national origin, marital
status, or sex discrimination. ASA Paul Fiddick in the USDA's
final determination said it well, stating that "there was nothing
. . . that gave even a fair hint that unlawful discrimination of
any type was the basis for [the] charges." (Walkow Decl., Ex. A.
at 5.) This Court cannot construe the complaint about

---

[9]    It is interesting to note that while the Ordilles argue
that this complaint alleges the discrimination that Mary Ordille
faced as a female farmer, the entire document is written in the
plural "we." (Pls.' Br., Ex. A.)

23

incompetent and insensitive administration to add such discrimination charges to it.

The Ordilles may have felt discrimination and may have wanted to allege it. However, their complaint looks like a standard program complaint filed with a government agency to allege problems with the administration of a government program. As such, it is not an eligible complaint under section 741.

### 2. January 1, 1998 Complaint

The Ordilles filed a second complaint on January 1, 1998 that clearly alleges discrimination. However, there is no question that the January 1, 1998 filing date is later than the July 1, 1997 eligibility date, making the complaint ineligible for a statute of limitations waiver under section 741.

However, the Ordilles seem to argue that they began alleging discrimination before July 1, 1997 that finally culminated in the filing of the January 1, 1998 complaint. Therefore, they argue that the January 1, 1998 complaint should be treated as a pre-July 1, 1997 complaint.

This argument is unavailing because discrimination charges must be in writing. See 7 C.F.R. § 15f.4 (defining "complaint" as "a written document filed with USDA by a person alleging discrimination by USDA under a covered program"). An alleged oral statement to an agency representative is not a properly filed charge of discrimination because notice of such statement

24

cannot be expected to reach all appropriate individuals.  Vela,
218 F.3d at 665.

Therefore, here, where it is uncontested that the Ordilles
charge of discrimination was not filed in written form until
January 1, 1998, it is clear that the discrimination charge was
not filed pre-July 1, 1997 and is thus not an eligible complaint
under section 741.

### 3.  Reliance on USDA Communications

The detail that makes this case difficult for the Ordilles,
however, is their uncontested confusion over the receipt of three
letters regarding their "pre-July 1, 1997 complaint."  The
Ordilles argue that they justifiably relied on these letters
because they had filed a complaint before July 1, 1997.
Therefore, they argue that their complaint should be considered
eligible under section 741 even though if it does not meet the
section 741 requirements.

This Court agrees with Chief ALJ Heifeiz when he stated that
"[c]omplainants have every right to be confounded by their
correspondence from the Office of Civil Rights" as it repeatedly
told them that their complaint was being considered under section
741. (Walkow Decl., Ex. B.)  However, this Court still cannot
offer plaintiffs the relief they seek.

Under the doctrine of sovereign immunity, the United States
and its agencies cannot be sued unless it consents to a waiver of

25

its sovereign immunity.  United States v. Sherwood, 312 U.S. 584, 586 (1941); Stehney v. Perry, 101 F.3d 925, 933 (3d Cir. 1996). The terms of the waiver, which must be "unequivocally expressed," define the court's jurisdiction over such suits.  United States v. Nordic Village, 503 U.S. 30, 33 (1992); Sherwood, 312 U.S. at 586.  Waivers are not to be liberally construed, but must be "construed strictly in favor of the sovereign . . . and not enlarged beyond what the language requires." Nordic Village, 503 U.S. at 34 (quoting McMahon v. United States, 342 U.S. 25, 27 (1951); Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983)).

The Equal Credit Opportunity Act, (ECOA), provides a waiver of sovereign immunity, allowing suit against the USDA within a two-year statute of limitations period regarding claims of discrimination.  15 U.S.C. §§ 1691(a), 1691e(f).  Section 741 expanded the waiver further to allow suit against the USDA beyond the two-year period, but only if the complaint is:

> a non-employment related complaint that was filed with the Department of Agriculture before July 1, 1997 and alleges discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996 –
> (1)  in violation of the Equal Credit Opportunity Act (15 U.S.C. 1691 et seq.) in administering –
>       (A)  a farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account; or
>       (B)  a housing program established under title V of the Housing Act of 1949 . . .; or
> (2)  in the administration of a commodity program or a disaster assistance program.

26

Section 741(e).  The terms of the waiver of sovereign immunity are clear.  This Court cannot expand them, not even if it would like to.  While the USDA was clumsy and careless in handling the Ordilles' complaint, this Court cannot provide relief to the Ordilles under the terms of section 741 to enlarge the time for filing the complaint beyond the period already created by Congress.

**III.   <u>CONCLUSION</u>**

In conclusion, this Court finds that the Ordilles did not file a complaint that meets the eligibility requirements of section 741.  Therefore, for the reasons discussed herein, and because no genuine issues of material fact remain in dispute in this case, defendants' motion for summary judgment will be granted and plaintiffs' complaint against defendants will be dismissed with prejudice.  The accompanying Order is entered.


**September 26, 2005**            **s/ Jerome B. Simandle**
DATE                              JEROME B. SIMANDLE
                                  U.S. DISTRICT JUDGE